# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND (NORTHERN DIVISION)

| | | |
|---|---|---|
| TECH USA, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 1:15 CV 03761 |
| | ) | |
| RYAN G. BABBIE, | ) | |
| DIVERSANT, | ) | |
| LLC, and JOHN T. MULLEN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff TECH USA, LLC ("TECH USA" or "Plaintiff") by and through its attorneys Allan P. Hillman, Esq. of Kern & Hillman, LLC and Grover C. Outland, III, and sues Defendants Ryan G. Babbie ("Mr. Babbie"), John T. Mullen ("Mr. Mullen"), and Diversant, LLC ("Diversant"), a New Jersey limited liability company with its principal office in Red Bank, New Jersey (collectively, "Defendants"). TECH USA sues Defendant Mr. Babbie for breach of contract (violation of post-term employee non-solicitation covenant); breach of contract (confidential information); breach of contract (post-term covenant not to compete); statutory trade secret misappropriation; common law unfair competition; and civil conspiracy; sues Defendant Diversant for tortious interference with the contract between Plaintiff and Mr. Babbie; statutory trade secret misappropriation; common law unfair competition; and civil conspiracy, and sues Defendant Mr. Mullen for tortious interference with the contract between Plaintiff and Mr. Babbie; common law unfair competition; and civil conspiracy..

1

## THE PARTIES

### TECH USA

1.      TECH USA, LLC is a Maryland limited liability company with its principal place of business at 8334 Veterans Highway, Millersville, MD 21108.  Each of Plaintiff TECH USA's members is a citizen of Maryland; consequently, Plaintiff is a citizen of Maryland.

2.      TECH USA is a mid-size competitor in the nationwide and worldwide market for providing customized staffing consulting, and subcontracting support to commercial and government clients.  Plaintiff opened for business in a single 1,000 square foot office in Millersville, Maryland in early 1998 and has, in the past seventeen years, grown to 12 offices in 11 States.  TECH USA has expertise particularly in the areas of recruiting and staffing.  Its competitors range from large, publicly held companies, to mid-sized companies (such as Plaintiff and Diversant), to small start-ups.  TECH USA develops close working relationships with its corporate and non-corporate customers in order better to understand and service their personnel and hiring needs, and, furthermore, extensively trains and develops close working relationships with its internal and external (contract) employees in order more completely and professionally to meet TECH USA's customers' personnel requirements and hiring needs.

### DEFENDANTS MR. BABBIE AND MR. MULLEN

3.      Defendants Mr. Babbie and Mr. Mullen are individuals and residents of Pennsylvania.  On information and belief, each of them carries on a regular business, is employed, or habitually engages in a vocation at the Media, Pennsylvania office of Defendant Diversant at 1400 N. Providence Road, Suite 4005, Media, PA  19063. On information and

2

belief, Mr. Babbie resides at 116 Cooper Hawk Drive, Coatesville, PA 19320, and Mr. Mullen resides at 324 West Laurier Place, Bryn Mawr, PA 19010.

.

## DEFENDANT DIVERSANT

4.      Defendant Diversant's website recites that it is a New Jersey limited liability company that specializes in staffing and recruiting, among other things.  Pursuant to information on that website, its principal office is located at 331 Newman Springs Road, Building 3, 2nd Floor, Suite 350, Red Bank, NJ 07701.  As its website discloses, it has nine offices around the country, including offices in a state adjoining Maryland (Pennsylvania, through its Media, PA office).

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under all Counts of this Complaint pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy, with respect to the equitable claims alone, exceeds the sum of $75,000, exclusive of interest and costs.

6.      Personal jurisdiction and venue are proper in this judicial district as to Defendant Mr. Babbie because he expressly agreed in paragraph 7 of his Confidentiality/Non-Competition Agreement with Plaintiff (a true and correct copy of which Agreement is attached hereto as **Exhibit A**) that he irrevocably consents,

> in any action brought by the Company in connection with any matters described in paragraph 5 of this Agreement [providing for injunctive relief where Plaintiff has been caused immediate irreparable harm], to the jurisdiction of any federal or state court within the State of Maryland, as the only mandatory and proper forum, and [he] irrevocably waive[s] all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision.

Personal jurisdiction and venue are proper in this judicial district as to Defendant Mr. Mullen because he expressly agreed in paragraph 7 of his Confidentiality/ Non-Competition Agreement with Plaintiff's sister company, almost word-for-word identical to the provision in Mr. Babbie's Agreement above, to consent irrevocably to the jurisdiction and venue of this Court.

7.      Agreement ¶5 provides that in the event of any breach of the "above provisions" of the Agreement (i.e. paragraphs 1-4, including, without limitation, covenants relating to Confidential Information, Trade Secrets, Company Property, Non-solicitation, and Non-competition), such breach will cause TECH USA "immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event." And, further, in the event of any such breach, Defendant Mr. Babbie agrees in ¶5 that Plaintiff "shall have the right to proceed directly to any state or federal court in Maryland under the usual equity rules in order to obtain injunctive relief, including, without limitation, temporary restraining orders, preliminary injunctions and permanent injunctions against such breach (threatened or otherwise)." Agreement ¶5 further provides that the injunction shall run for a period of eighteen months from the date the injunction is granted, rather than eighteen months from the date of Termination of Employment (in this case, the October, 30, 2015 date termination of Mr. Babbie's employment with TECH USA).

8.      Paragraph 8 of the Confidentiality/Non-Competition Agreement requires, except for "legal actions for matters described in paragraph 5" of the Agreement (this Complaint being such an exception), that claims between the parties must first be submitted to mediation to take place in the Baltimore, MD metropolitan area pursuant to then-prevailing Employment Dispute Resolution Rules of the American Arbitration Association.

9.      Among other things, injunctive actions for Trade Secret/Confidential Information violations (Agreement, § 1), customer and employee non-solicitation covenants [Agreement, §§ 3 a) and 3 b)], and breaches of the post-term covenants not to compete and related claims [Agreement, § 4(a)] are to be litigated in a court of competent jurisdiction such as this Court. Hence this Complaint.

10.      Personal jurisdiction over Defendant Diversant is proper because, pursuant to records of the Maryland Department of Assessments and Taxation, Defendant Diversant has maintained, since February 3, 2010, a principal office in the State of Maryland (in Lutherville, MD) and has a resident agent in Lutherville, Maryland, and because, on information and belief, Defendant Diversant, either directly or by an agent/its agents:

(i)  transacts or has transacted business in the State of Maryland by (a) soliciting and/or hiring Maryland residents for contract assignments and/or direct placements in Maryland and/or in other States, (b) advertising via its website and other means and/or making offers to Maryland residents to work on a contract or direct placement basis for Defendant Diversant's customers in Maryland and/or in other States, and/or (c) soliciting, making offers to and/or providing services to the Maryland offices of companies/customers headquartered in other States and/or in Maryland;

(ii) contracts and/or has contracted to supply personnel and/or services in the State of  Maryland;

(iii) causes and/or has caused tortious injury to Plaintiff, which is headquartered in Maryland, by an act of tortious interference with a contract entered into in Maryland which specifically provides for jurisdiction before the courts of the State of Maryland;

(iv) causes and/or has caused tortious injury to Plaintiff, which is headquartered in

Maryland, by an act (or omission) outside of Maryland, and Defendant Diversant

regularly does or solicits business and/or advertises for business and/or employees

and/or engages in any other persistent course of conduct in the State and/or derives

substantial revenue from services or personnel used, provided, located, contracted,

and/or assigned in the State, all as set forth in (i) and (ii) above.

Personal jurisdiction over Defendant Mr. Mullen is also proper because, on information and

belief, Defendant Mr. Mullen, either directly or by an agent/its agents:

(i)  transacts or has transacted business in the State of Maryland by (a) soliciting

and/or hiring Maryland residents for contract assignments and/or direct placements in

Maryland and/or in other States, (b) advertising via his or Defendant Diversant's

website and other means and/or making offers to Maryland residents to work on a

contract or direct placement basis for Defendant Diversant and/or its customers in

Maryland and/or in other States, and/or

(c) soliciting, making offers to and/or providing services to the Maryland offices of

companies/customers headquartered in other States and/or in Maryland;

(ii) contracts and/or has contracted to supply personnel and/or services in the State of

 Maryland;

(iii) causes and/or has caused tortious injury to Plaintiff, which is headquartered in

Maryland, by an act of tortious interference with a contract entered into in Maryland

which specifically provides for jurisdiction before the courts of the State of Maryland;

(iv) causes and/or has caused tortious injury to Plaintiff, which is headquartered in

Maryland, by an act (or omission) outside of Maryland, and Defendant Mr. Mullen

regularly does or solicits business and/or advertises for business and/or employees

6

and/or engages in any other persistent course of conduct in the State and/or derives substantial revenue from services or personnel used, provided, located, contracted, and/or assigned in the State, all as set forth in (i) and (ii) above.

11.     Pursuant to the terms of the aforementioned Confidentiality/Non-Competition Agreement between Plaintiff and Mr. Babbie, he became an employee of Plaintiff on or about February 2, 2015 working in TECH USA's Greater Philadelphia-area office in Plymouth Meeting, PA on TECH USA's team that exclusively serviced a major cable company customer of TECH USA (the "TECH USA Cable Customer").  In that capacity, he worked on recruiting for numerous personnel requirements and positions of the TECH USA Cable Customer; indeed, servicing the TECH USA Cable Customer was his principal focus during the majority of his employment with Plaintiff.  (In order to retain the confidentiality of the name of the TECH USA Cable Customer, it is not mentioned in this Complaint by name.)  After almost nine months with TECH USA as an IT Recruiter, the Defendant Mr. Babbie's employment with Plaintiff was terminated for cause on October 30, 2015 and then, within less than three weeks of that termination, TECH USA management discovered that he was working for its competitor, Defendant Diversant, at its Media, PA office in the essentially identical role of IT Recruiter. Over his more than 9-month period of employment, TECH USA spent tens of thousands of dollars on Mr. Babbie's salary, training and development as an IT Recruiter.  A recent "screen shot" of Defendant Mr. Babbie's LinkedIn profile (a true and correct copy of which is attached hereto as **Exhibit B**) taken just before the filing of this Complaint, confirms that Mr. Babbie is in fact working in recruiting and staffing as an IT Recruiter for Defendant Diversant in the Greater Philadelphia Area.

## THE CONTROVERSY

12.     As set forth below, the Confidentiality/Non-Competition Agreement protects TECH USA's trade secrets and Confidential Information (collectively "Confidential Information") and also requires Defendant Mr. Babbie to refrain from, among other things, (a) soliciting TECH USA's employees and/or encouraging the departure of any of TECH USA's employees from TECH USA's employment for a limited time, (b) soliciting and/or servicing TECH USA's clients/customers for a limited period of time after Mr. Babbie leaves its employ, and (c) competing with TECH USA within a limited geographic area.

13.     Paragraph 3d) of the Confidentiality/Non-Competition Agreement that Defendant Mr. Babbie signed provides (in pertinent part) that ". . . for eighteen (18) months after Termination of Employment, [he] will not in any manner:

> d) solicit, induce, attempt to solicit or induce, or assist others to solicit, induce or attempt to solicit or induce any employee or other individual, business, corporation or other entity associated with any of the TECH USA Companies to terminate his/her/its employment or association with the TECH USA Companies (or one or more of them), nor will you directly or indirectly interfere with the business relationship between the TECH USA Companies (or one or more of them) and any such individuals, businesses, corporations, and other entities.

14.     Paragraph 3a) of the Confidentiality/Non-Competition Agreement that Defendant Mr. Babbie signed provides (in pertinent part) that ". . . for eighteen (18) months after Termination of Employment, [he] will not in any manner:

> a) approach, contact, or solicit, or assist others to approach, contact, or solicit, any individual, business, corporation or other entity which, at any time within the two (2) year period prior to the date of Termination of Employment, was a Customer
> (i) of any one or more of the TECH USA Companies, which Customer you serviced or with which Customer you had contact…

8

15.     Subparagraph a) of Confidentiality/Non-Competition Agreement ¶ 4 (Non-competition) provides (in pertinent part) that

> . . . for eighteen (18) months after Termination of Employment, [Mr. Babbie] agree[s] that [he] will not, either directly or indirectly, in any manner or capacity, as employee, principal, agent, partner, officer, director, member of any association or limited liability company, member of any association or limited liability company, consultant, advisor or in any capacity other than in [his] capacity as an employee of [TECH USA]:
>
>> a) (after Termination of Employment) engage in or work for any individual, business, corporation, other entity or activity which engages (in whole or in part) in the business of recruiting, assigning, placing, or providing employees, on a contingent search, direct placement, permanent, contract, or temporary basis, from or in an office located within fifty (50) miles of any of [TECH USA's] offices in which you worked during the last twenty-four (24) months [of your Tech USA employment].

As a general matter, TECH USA does not seek to bar Mr. Babbie from working in the staffing industry.   Rather, consistent with the express wording of the above-quoted contractual restriction, Plaintiff seeks only to restrain him from any of the activities prohibited by Agreement paragraph 4(a) within 50 miles of Plaintiff's Plymouth Meeting, PA office, for eighteen months. The 18-month period commences upon the later of the termination of employment or the date an injunction halting any violation is granted. (Id at ¶ 5).  This provision is designed to address precisely the situation which exists here:   TECH USA bargained for a full 18 months of protection.  It has confirmed it was not receiving that for which it had bargained; unless the 18-month restriction runs from the date of the Court's injunction order, it will lose a material part of its bargained-for protection.

16.     Plaintiff terminated the employment of Defendant Mr. Babbie, an "at will" employee pursuant to his Agreement with TECH USA, for cause on October 30, 2015 in that Mr. Babbie repeatedly failed to achieve the minimum performance metrics for a TECH USA

Recruiter.  Among other things, Defendant Mr. Babbie only achieved one (1) start of a contract employee on assignment to a TECH USA customer during his <u>entire</u> employment with Plaintiff. For the typical TECH USA Recruiter, after a training/acclimation period of a couple of months, the expectation is that the Recruiter will have one-two starts per month.  Defendant Mr. Babbie's other performance metrics while at TECH USA fell well below the metrics expected of him and the other Recruiters for the majority of weeks that he worked at the Plymouth Meeting office. Furthermore, his job performance further deteriorated after he was convicted of driving under the influence (DUI) in the summer of 2015 and his driver's license was suspended for at least two months.  During that time frame, he had to impose on other employees of the Plymouth Meeting office to give him rides to and from work and was not able to spend any additional time in the office to improve his job performance and achieve metrics that exceeded the standard for a TECH USA Recruiter.  Ultimately, on October 30, 2015 Plaintiff terminated Defendant Mr. Babbie's employment for cause, i.e. his substantial lack of performance during his approximate nine months as a Recruiter.

17.    At some point after the October 30, 2015 termination of his employment with TECH USA, however, Defendant Mr. Babbie started work with Defendant Diversant at its Philadelphia metropolitan area office, well within the fifty-mile prohibited zone (i.e., 50 miles from TECH USA's Plymouth Meeting office) in violation of the limited Non-Competition covenant to which Mr. Babbie had agreed in his Confidentiality/Non-Competition Agreement with TECH USA.

18.    On information and belief, in the course of Defendant Mr. Babbie's meetings and or communications with Defendant Diversant, he has disclosed to Diversant the identity of certain TECH USA customers and/or employees, as well as other information regarding those

customers and/or employees, which information constitutes TECH USA's Trade Secrets and/or Confidential Information, and such disclosures have caused TECH USA irreparable harm. Defendant Mr. Babbie's disclosures of such information were in violation of Confidentiality/Non-Competition Agreement, ¶ 1, as quoted below, and of the Maryland Uniform Trade Secrets Act, as also detailed below.

19.     Shortly after October 30, 2015, Defendant Mr. Babbie joined Defendant Diversant as an IT Recruiter (the exact same role he had had while at TECH USA).  In mid-November 2015, Plaintiff learned that Defendant Mr. Babbie has been servicing, while a Diversant IT Recruiter, the TECH USA Cable Customer (which Mr. Babbie had serviced almost exclusively while an IT Recruiter at TECH USA).  On November 18, 2015, Defendant Mr. Babbie, while an IT Recruiter at Diversant, called and then wrote an existing contract employee of TECH USA, who at the time was on assignment to the TECH USA Cable Customer through TECH USA (the "Babbie-Solicited TECH USA Employee"), attempting to solicit him to begin an assignment to the TECH USA Cable Customer, but as an employee of Defendant Diversant (and not of TECH USA).  (In order to retain the confidentiality of the name of the Babbie-Solicited TECH USA Employee, he is not mentioned in this Complaint by name.)    During the third week of November 2015, Plaintiff TECH USA learned of Defendant Mr. Babbie's multiple violations of his Confidentiality/Non-Competition Agreement with TECH USA, and, on information and belief, of the Defendant Diversant's tortious interference with contractual relations and other wrongdoing, and this suit followed promptly.

20.     On November 19, 2015, TECH USA sent Defendant Mr. Babbie a demand email; TECH USA has never received a response from him to that email.  That same day (November 19), TECH USA also sent Defendant Diversant's counsel a demand letter, and Diversant, by its

outside counsel, responded by letter dated November 25, 2015 denying, among other things, any wrongdoing on its behalf or on behalf of its employee Defendant Mr. Babbie and stating that Mr. Babbie's employment as an IT Recruiter with Diversant at its Media, PA office would continue, essentially unchanged.

21.     Under paragraph 1 (<u>Confidential Information/Trade Secrets</u>) of the Confidentiality/Non-Competition Agreement between Defendant Mr. Babbie and Plaintiff, Defendant Mr. Babbie agreed that "during [his] employment by [TECH USA] and, after [his] termination, whether by [Defendant Mr. Babbie or TECH USA] with or without cause (collectively "Termination of Employment"), [he agrees] that [he] shall not use for [his] own benefit, or the benefit of any third party, or disclose or divulge to any third party, any Confidential Information (as defined below) or Trade Secrets, as defined in the Maryland Uniform Trade Secrets Act ("MUTSA")." Under such ¶ 1, "Confidential Information" means, <u>inter alia</u>, all information

> (the selection, arrangement, and compilation of which is not generally known by [TECH USA's] competitors or the general public) concerning [TECH USA], including, but not limited to: (a) its/their financial affairs, sales, and marketing strategies; business and marketing plans, profit margins and pricing policies and practices, sales and marketing techniques; financial data and plans history and data forecasts; fee schedules, orientation guides, commission and/or bonus plans; personnel information including without limitation compensation structures, qualifications, and hiring practices, personnel training techniques and materials; product manuals, training manuals, presentations, and materials (whether provided at conferences, meetings, over the Internet, or using other means of communication/transmission; inventions, processes and compilations of information; records and specifications, computer database, programs and software; acquisition plans; pricing and costs; (b) any of the following information about corporations, companies, or other entities, including, without limitation, their end-clients (collectively Customers) for which [TECH USA] employs, recruits, supplies or otherwise finds or arranges employees: any lists or other

compilations of Customers;  such  Customer's names, addresses, and direct-dial, mobile, and other telephone numbers; hiring managers' or other contact persons' names, email addresses and direct-dial, mobile and other telephone numbers; staffing requirements, personnel needs, pricing sensitivities or preferences; margin tolerances regarding pricing; and any other information concerning or relating to any future or ongoing requirements for services of Customer(s) that you are or have been providing services to on behalf of the Company, as well as the requirements of any other customers, individuals or entities that you have been introduced to or have otherwise gained information about, either directly or indirectly, as a result of your employment with [TECH USA] (c) any of the information described in subsection (b) above regarding prospective Customers of [TECH USA]; and (d) the names, addresses, telephone numbers (including but not limited to direct-dial, mobile, and other telephone number(s), email addresses, skill sets, availability and wage rates, salary history, desired salary, and/or salary ranges of any contract employees and/or any other personnel [TECH USA] employs, recruits, assigns, places, supplies or otherwise finds or arranges for its Customers.  All of the above Confidential Information described in or encompassed in the preceding sentence also constitutes Trade Secrets, together with anything else that is defined as a Trade Secret under the MUTSA.  You further agree that all Confidential Information and Trade Secrets provided to you (or otherwise accessed or received by you) during your employment are the exclusive property of [TECH USA] and/or its customers….

22.     From each of its offices, TECH USA expends a large amount of money, time, and other resources on its recruiters (who are really inside salespeople), training them to research their territory and to identify and screen candidates and customers (by "G-2ing" them) and, as they become more experienced in recruiting, develop customer relationships.  For even a well-trained inside or outside recruiter or salesperson, obtaining (and then retaining through excellent servicing) a new customer can take anywhere from twelve (12) to twenty-four (24) months from initial "cold call" or introduction/referral, to obtaining various meetings, to placing the first contract employee on assignment there with the customer (or providing a new employee for direct placement with the customer). The 18-month duration of the covenant not to compete in

Mr. Babbie's Confidentiality/Non-Competition Agreement with TECH USA reflects that lengthy recruiting and sales cycle and also the fact that, after a recruiter or salesperson leaves TECH USA's employment, there needs to be a reasonable period (18-24 months) in which the former recruiter or salesperson refrains from soliciting Plaintiff's customers and employees and/or competing in the relevant market area where such former employee worked.  This hiatus allows for the orientation and training of a new recruiter or salesperson to replace the former employee and for the orderly transition to the replacement of TECH USA customer relationships and accounts that the former recruiter or salesperson serviced during his/her employment. Significantly, an 18-month restriction is the duration that many of Plaintiff's competitors have in their non-compete agreements with their employees, while others choose a lengthier period.

23.     In training its staffing recruiters and salespeople, TECH USA provides them with Confidential Information and Trade Secrets that TECH USA has developed over its 17-year history, affording the recruiter/salesperson access to specific data on existing candidates, prospective candidates, existing customers and prospective customers, including but not limited to non-public contact information for those candidates and customers (especially hiring managers of the latter), as well as methods, techniques, and tools to price Plaintiff's services and expand its business/servicing footprint within the customer's organization, in order to grow TECH USA's offerings/services from finding personnel for one business unit or department (e.g. IT) within a customer to several units or departments with the customer's organization (e.g. Engineering, Infrastructure-Telecommunications, etc.).   Confidential Information and Trade Secrets that TECH USA recruiters and salespeople, including the Defendant Mr. Babbie, receive in order to perform their jobs include candidate, contract employee, corporate and other customer names, street addresses, telephone numbers, hiring manager contact information (including,

without limitation, hiring manager direct dial phone number and email address), pricing margins used in past transactions, customer preferences on preferred staffing solutions -- whether they utilize contract assignments, direct/permanent placements, "temp to perm" (otherwise known as "right to hire") arrangements, or other staffing solutions -- in securing new personnel.   Among other things, the Babbie-Solicited TECH USA Employee's status as a contract employee assigned to Plaintiff TECH USA's Cable Customer, his contact information, wage rate, skill sets, availability, are all Confidential Information and Trade Secrets of TECH USA.

24.    All of the Confidential Information and Trade Secrets described in the preceding paragraph constitutes information that TECH USA has developed over many years with substantial effort and experience; Plaintiff has safeguarded that Confidential Information and those Trade Secrets -- it was not and has not been public information, nor was it (or has it been) readily available to Plaintiff's competitors.   In fact, the Confidential Information and Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain it.   While an element or two of the above Confidential Information and Trade Secrets may be ascertainable outside of TECH USA's business (such as the customer's corporate name and a switchboard or other listed phone number), it is the combination of all of the elements, especially candidate and hiring manager contact information, including hiring managers' and other contact persons' email addresses and direct dial phone numbers, customer pricing margins, and customer preferences on preferred staffing solutions, together with the identity, skillsets, salary levels, and contact information of the TECH USA employees and candidates providing those solutions, that proves extremely valuable, indeed indispensable to TECH USA's (and to any competitor's) business.   That information as a whole is not known outside of Plaintiff's business.   Defendant Babbie, a TECH USA IT Recruiter for

almost 9 months (almost all of it on Plaintiff's Plymouth Meeting office team servicing TECH USA's Cable Customer) has joined Defendant Diversant in recruiting and staffing as an IT Recruiter in the exact same market, and within twenty miles of TECH USA's Plymouth Meeting office (well within the 50-mile prohibited zone) in the Greater Philadelphia Area.  The TECH USA Confidential Information and Trade Secrets possessed by Defendant Mr. Babbie are particularly valuable to him in his new position, and to his new employer Defendant Diversant.

25.    Only those employees of Plaintiff involved in recruiting/inside sales (such as Mr. Babbie), outside sales, and sales management, know the above Confidential Information and Trade Secrets, and TECH USA safeguards it by taking such measures as (i) requiring that recruiting, sales, and sales management employees of Plaintiff who need access to Confidential Information and Trade Secrets (in order to service TECH USA customers and accounts) sign Plaintiff's form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects those Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the above Confidential Information and Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's candidate and/or customer names or other customer information (or Plaintiff employee names or other Plaintiff employee information) on the TECH USA website or in any other public forum; rather, the TECH USA Confidential Information and Trade Secrets are provided only to those management, sales and recruiting employees (who comprise a small percentage of Plaintiff's total employee roster) having a "need to know."  Access to the current TECH USA database that came into use in 2006 is via unique user name and password only, both of which are inactivated when an employee leaves the company.  The above Confidential Information and Trade Secrets are extremely valuable to TECH USA and its competitors

because, armed with that Information and those Secrets, a competing staffing firm or former employee of Plaintiff could initiate a business relationship with Customers of TECH USA and steal business from Plaintiff.  Defendant Mr. Babbie is wrongfully using, for his and his new employer Defendant Diversant's own benefit, TECH USA's Confidential Information and Trade Secrets in order to steal business from TECH USA, all in violation of the terms of Defendant Mr. Babbie's Confidentiality/Non-Competition Agreement with Plaintiff.

26.     As described above, Plaintiff expends months of effort and much money, e.g. salaries of TECH USA management, recruiting, and sales employees (including the thousands of dollars expended on Defendant Mr. Babbie's compensation over almost 9 months with TECH USA, on his recruiting/inside sales development efforts, time and expenditures on meetings with candidates and customer representatives, and the like) in developing and enhancing the Confidential Information and Trade Secrets.  Properly acquiring or duplicating the above Confidential Information and Trade Secrets, as a whole, would be very difficult to accomplish because such Information and/or Secrets are not located in one publicly accessible database.  It has been developed over many months and years of numerous cold calls and meetings, and includes, as well, Plaintiff's detailed experience in actual transactions with the customer(s) in order to determine pricing margins and customer preferences on staffing solutions provided.

27.     TECH USA's Managing Directors (who are also in sales) and outside salespersons (known as "Account Executives" or "Business Development Managers"), as well as Plaintiff's inside salespersons (beginning with entry-level "Recruiters" and other, more experienced Recruiters), each signs a "Confidentiality/Non-Competition Agreement" with Plaintiff in order to protect Plaintiff's interests in its business relationships with TECH USA customers and employees (including, without limitation, its contract employees and candidates)

that Plaintiff assigns/refers to its customers, and also to protect Plaintiff's Confidential Information, Trade Secrets, and Company Property that are made available to TECH USA employees in order for them successfully to secure and service customers.  Despite the extended sales cycle needed to secure certain large corporate customers (up to 24 months), Defendant Mr. Babbie was required to sign a non-competition agreement with a duration of only 18 months. Moreover, eighteen months of "cooling off" by locking out a former employee from a particular market or group of customers or candidates s/he serviced while a TECH USA employee, as explained above, affords Plaintiff a reasonable (but sometimes insufficient) opportunity to train the new inside (recruiter) or outside salesperson to replace the former employee and to transition the accounts (or candidate pool and resumes) in question to the new salesperson without interference from the former employee.  On the other hand, TECH USA's reasonable post-term restrictions do not unduly burden a former employee in his/her job search or pursuit of new career opportunities.

28.  The geographic scope of TECH USA's non-compete (50 miles) reflects the typical size of a large metropolitan area in the United States.  Although TECH USA operates in many larger markets such as Northern Virginia/Washington, D.C., Atlanta, Orlando, Tampa, Phoenix/Tempe, Baltimore/Annapolis/Central Maryland, and Philadelphia/Southern New Jersey/Delaware where a distance of 75 or even 100 miles might be appropriate, Plaintiff's Senior Management directed that the geographic line be drawn at 50 miles, a benefit to former employees.  If there were no such restriction from each TECH USA office in which an employee had worked, then a former employee (such as the Defendant Mr. Babbie) would be free to join or locate an existing or new competing business near one of Plaintiff's offices where that employee worked and attempt to exploit for his/her own benefit TECH USA's Confidential

18

Information/Trade Secrets and compete directly with that TECH USA office by soliciting many of Plaintiff's Candidates and Customers there (including, without limitation, ones the former employee had serviced at the TECH USA office/offices where s/he had worked).  Again, the fifty (50) mile radius strikes a reasonable balance between Plaintiff's business interests and its former employee's ability to earn a livelihood; indeed, it is overly reasonable to the Defendant Mr. Babbie.  TECH USA's former employees, such as Defendant Mr. Babbie, are then free to be employed in a similar job outside the restricted area, or in a different industry or job within the 50-mile restricted area, as long as he does not violate the other provisions of his Confidentiality/Non-Competition Agreement with TECH USA.   Here, the Defendant Mr. Babbie, who had served as an IT Recruiter on Plaintiff's  Plymouth Meeting office team that exclusively serviced the TECH USA Cable Customer, has chosen to be employed in the same (or similar) recruiting and staffing capacity as an IT Recruiter servicing the TECH USA Cable Customer for Defendant Diversant in its Media, PA office, clearly less than 20 miles within the 50-mile prohibited zone - - a blatant violation of his Confidentiality/Non-Competition Agreement with TECH USA.

## COUNT I

### Breach of Contract (Post-Term Employee Non-Solicitation Covenant) – Defendant Mr. Babbie

29.    Plaintiff TECH USA hereby incorporates paragraphs 1-28 as if each were fully set forth herein.

30.    Paragraph 3 d) of the Parties' Agreement provides that, during Defendant Mr. Babbie's employment by the Company and for eighteen (18) months after Termination of Employment, he will not in any manner:-

d) solicit, induce, attempt to solicit or induce, or assist others to solicit, induce or attempt to solicit or induce any employee or other individual, business, corporation or other entity associate with any of the TECH USA Companies to terminate his/her/its employment or association with the TECH USA Companies (or one or more of them), nor will you directly or indirectly interfere with the business relationship between the TECH USA Companies (or one or more of them) and any such individuals, businesses, corporations, and other entities.

31.     On November 18, 2015, Defendant Mr. Babbie emailed (after calling) TECH USA's existing contract employee at the TECH USA Cable Customer, soliciting him to begin a new assignment to the TECH USA Cable Customer through Babbie's new employer Defendant Diversant.   Defendant Mr. Babbie's solicitation email attached the job description for the position with the TECH USA Cable Customer that Defendant Babbie was trying to fill on behalf of his new employer Defendant Diversant.

32.     The harm to Plaintiff resulting from that solicitation by Defendant Mr. Babbie of the Babbie-Solicited TECH USA Employee then assigned by Plaintiff to the TECH USA Cable Customer, in an effort to get that existing Employee of TECH USA begin a new assignment to the TECH USA Cable Customer through Babbie's new employer Defendant Diversant, is irreparable, and (unless enjoined) will continue to cause damage and irreparable harm to Plaintiff.  The harm cannot be compensated in money damages.

WHEREFORE, Plaintiff prays judgment as follows:

(a)          Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 3 d) and 5 of the Confidentiality/Non-Competition Agreement, enjoining the Defendant Mr. Babbie, his agents, servants, and employees, and all those acting in concert with them, from violating the employee non-solicitation provisions of paragraph 3 d) of the Agreement.

(b)        Entry of an Order requiring an accounting by the Defendant Mr. Babbie to TECH USA of Defendant Mr. Babbie's sales and revenues resulting from his breach of contract (violation of post-term employee non-solicitation covenant), as to which sales and revenues TECH USA may be entitled as a result of his aforesaid acts.

(c) Entry of a judgment against the Defendant Mr. Babbie for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9, the attorney fees provision of the Confidentiality/Non-Competition Agreement between Plaintiff and Mr. Babbie).

## COUNT II

### Breach of Contract (Post-Term Customer Non-Solicitation Covenant) – Defendant Mr. Babbie

33.    Plaintiff TECH USA hereby incorporates paragraphs 1-32 as if each were fully set forth herein.

34.    Paragraph 3 a) of the Parties' Agreement provides that, during Defendant Mr. Babbie's employment by the Company and for eighteen (18) months after Termination of Employment, he will not in any manner:-

> a) approach, contact, or solicit, or assist others to approach, contact, or solicit, any individual, business, corporation or other entity which, at any time within the two (2) year period prior to the date of Termination of Employment, was a Customer
> (i) of any one or more of the TECH USA Companies, which Customer you serviced or with which Customer you had contact…

35.    On or about November 18, 2015, on behalf of his new employer Defendant Diversant, Defendant Mr. Babbie solicited, by phone call and email, the Babbie-Solicited TECH USA Employee to go on assignment to the TECH USA Cable Customer through Babbie's new

employer Defendant Diversant, even after Defendant Babbie knew the Babbie-Solicited TECH USA Employee was already working for TECH USA at the TECH USA Cable Customer. Defendant Babbie's November 18 email attached the job description of the position at the TECH USA Cable Customer, for which position Defendant Babbie was soliciting TECH USA's existing Employee. Defendant Babbie worked almost exclusively on Plaintiff's Plymouth Meeting office team that solely serviced the TECH USA Cable Customer. His solicitation and servicing of the TECH USA Cable Customer, while an employee of Defendant Diversant and for Diversant, is in direct violation of Mr. Babbie's Agreement with TECH USA.

36.     The harm to Plaintiff resulting from that solicitation and/or servicing by Defendant Babbie of the TECH USA Cable Customer is irreparable, and, unless enjoined, will continue to cause damage and irreparable harm to Plaintiff. The harm cannot be compensated in money damages.

WHEREFORE, Plaintiff prays judgment as follows:

(a)          Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 3 a) of the Confidentiality/Non-Competition Agreement, enjoining the Defendant Mr. Babbie, his agents, servants, and employees, and all those acting in concert with them, from violating the customer non-solicitation provisions (including, without limitation, as to the TECH USA Cable Customer) of paragraphs 3 a) and 5 of the Agreement.

(b)          Entry of an Order requiring an accounting by the Defendant Mr. Babbie to TECH USA of Defendant Mr. Babbie's sales and revenues resulting from his breach of contract (violation of post-term customer non-solicitation covenant), as to which sales and revenues TECH USA may be entitled as a result of his aforesaid acts.

22

(c)         Entry of a judgment against the Defendant Mr. Babbie for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9, the attorney fees provision of the Confidentiality/Non-Competition Agreement between Plaintiff and Mr. Babbie).

## COUNT III

### Breach of Contract (Confidential Information) – Defendant Mr. Babbie

37.        Plaintiff TECH USA hereby incorporates paragraphs 1-36 as if each were fully set forth herein.

38.        Defendant Mr. Babbie's November 18, 2015 solicitation email to the Babbie-Solicited TECH USA Employee clearly demonstrates that Defendant Mr. Babbie exploited "for his own benefit" and/or "for the benefit of a third party" (i.e., his new employer Diversant) TECH USA's Confidential Information regarding the Babbie-Solicited TECH USA Employee, such as that existing TECH USA Employee's current and previous assignments with the TECH USA Cable Customer, while a TECH USA employee, his wage rates and availability, and his contact information.  After joining Defendant Diversant as an IT Recruiter (the same role he had with TECH USA, also in the Greater Philadelphia Area), Defendant Mr. Babbie began soliciting and/or servicing the TECH USA Cable Customer.  In doing so, Defendant Mr. Babbie exploited "for his own benefit" and/or "for the benefit of a third party" (i.e., his new employer Diversant) TECH USA's Confidential Information regarding the TECH USA Cable Customer, which Mr. Babbie had serviced extensively while at TECH USA – indeed, Defendant Mr. Babbie was on the Plymouth Meeting office team that exclusively serviced the TECH USA Cable Customer while he worked as an IT Recruiter at TECH USA's Plymouth Meeting, PA office.

39.     The names and other information on Plaintiff's existing employees (such as the Babbie-Solicited TECH USA Employee) and existing customers (such as the TECH USA Cable Customer) that Defendant Mr. Babbie, on information and belief, revealed to Plaintiff's competitor Defendant Diversant after his TECH USA employment definitely constitute "Confidential Information" (as defined in paragraph 1 of Defendant Mr. Babbie's Confidentiality/Non-Competition Agreement with TECH USA) and also constitute "Trade Secrets" (as defined under Maryland law).   Such disclosures by Defendant of Confidential Information for his own benefit (or for the benefit of a third party, including, without limitation, Defendant Diversant) were in clear violation of the Confidentiality/Non-Competition Agreement the Defendant Mr. Babbie had entered into with Plaintiff.

40.     Any and all use of TECH USA's Confidential Information (as detailed above) by the Defendant Mr. Babbie for his own benefit (or for the benefit of a third party, including, without limitation, Defendant Diversant) and/or merely the disclosure or divulging of Plaintiff's Confidential Information to any such third party would constitute acts in violation of paragraph 1 of the Confidentiality/Non-Competition Agreement(s) between Defendant Mr. Babbie and Plaintiff.

41.     Those acts described above by Defendant Mr. Babbie in violation of the Confidential Information provisions of his Confidentiality/Non-Competition Agreement have caused, and, unless enjoined, will continue to cause damage and irreparable harm to Plaintiff TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment as follows:

(a)          Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 1 and 5 of the Confidentiality/Non-

Competition Agreement, enjoining the Defendant Mr. Babbie, his agents, servants, and employees, and all those acting in concert with them, from violating the Confidential Information provisions of such Agreement.

(b)         Entry of an Order requiring an accounting by the Defendant Mr. Babbie to TECH USA of Defendant Mr. Babbie's sales and revenues resulting from his unauthorized use of TECH USA's Confidential Information, as to which sales and revenues TECH USA may be entitled as a result of his aforesaid acts.

(c) Entry of a judgment against the Defendant Mr. Babbie for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9, the attorney fees provision of the Confidentiality/Non-Competition Agreement between Plaintiff and Mr. Babbie).

## COUNT IV

### Breach of Contract (Post-Term Covenant Not to Compete) – Defendant Mr. Babbie

42.     Plaintiff TECH USA hereby incorporates paragraphs 1-41 as if each were fully set forth herein.

43.     Within three weeks of the termination of Mr. Babbie's employment with TECH USA, he joined TECH USA competitor (and co-Defendant) staffing firm Diversant's Philadelphia metropolitan area office in the exact same position of "IT Recruiter" that he had held at TECH USA, well within "fifty (50) miles" of Plaintiff's Plymouth Meeting, PA office where he worked for TECH USA, [see Agreement, ¶ 4(a)], Defendant Mr. Babbie has violated the post-term non-competition covenant in the Confidentiality/Non-Competition Agreement ¶ 4(a).  Further, it is indisputable that he is engaged in "(in whole or in part) in the business of recruiting, assigning, placing, or providing employees, on a contingent search, direct placement,

permanent, contract or temporary basis, from or in an office located" within 50 miles of the Plymouth Meeting, PA office (in fact Diversant's office is only about twenty miles distant from TECH USA's office in which Defendant Mr. Babbie used to work) and within 18 months of his Termination of Employment, all in violation of Confidentiality/Non-Competition Agreement ¶ 4(a).

44.    The Defendant Mr. Babbie's acts (as detailed above) in violating the post-term covenant not to compete in the Confidentiality/Non-Competition Agreements that he signed with TECH USA have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against the Defendant Mr. Babbie as follows:

(a) Entry of a Preliminary and Permanent Injunction pursuant to FRCP 65, and paragraphs 4(a) and 5 of his Confidentiality/Non-Competition Agreement with the Plaintiff in this case, enjoining the Defendant Mr. Babbie, his agents, servants, and employees, and all those acting in concert with them, from violating the non-competition provisions of each of such Agreements.

(b) Entry of an Order requiring an accounting by the Defendant Mr. Babbie to TECH USA of his sales and revenues from his contractual violations, as to which sales and revenues TECH USA may be entitled as a result of such Defendant Mr. Babbie's aforesaid acts.

(c) Entry of a judgment against Defendant Mr. Babbie for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreements between Plaintiff and him).

## COUNT V

### Statutory Trade Secret Misappropriation – Defendants Diversant and Mr. Babbie

45.     Plaintiff TECH USA hereby incorporates paragraphs 1-44 as if each were fully set forth herein.

46.     As recited in paragraph 1 of the Confidentiality/Non-Competition Agreement, in addition to Confidential Information, the Defendant Mr. Babbie received from Plaintiff in the course of his TECH USA employment Trade Secrets, as defined in the Maryland Uniform Trade Secrets Act (the "Act"), Md. Comm. Law Code Ann. §11-1201(e).

47.     Among the Trade Secrets entrusted to Defendant Mr. Babbie during his employment with Plaintiff was its customer list(s), including, without limitation, the identity of various TECH USA customers, as well as points of contact such as hiring managers at such customers (including without limitation such managers' email addresses and direct dial telephone numbers) and such customers' pricing/margins for contract assignments of personnel, direct placements, right-to-hire arrangements, and other staffing solutions preferred by such customers, together with the names, contact information, wage rates, availability, etc. of existing TECH USA employees (including, without limitation, TECH USA contract and internal employees).  The Trade Secrets described throughout this Count constitute information that TECH USA has developed over many years (with substantial effort and expenditures of resources) and that Plaintiff has safeguarded as Trade Secrets - - it was not public information, nor was it readily available to its competitors.  In fact, the Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain.

48.     Only those of Plaintiff's employees involved in management, sales and recruiting have access to the above Trade Secrets, and TECH USA safeguards those Secrets by taking such

measures as (i) requiring that those employees of Plaintiff who access Trade Secrets in order to service its customers and accounts (such as Defendant Mr. Babbie) to sign the TECH USA-form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects Plaintiff's Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information (or Plaintiff's employee names or other employee information) on the TECH USA website. Instead, Plaintiff's Trade Secrets are provided to those sales and recruiting employees (who comprise a small percentage of TECH USA's total employee roster) having a "need to know," and access to the company database started in 2006 is via unique user name and password only, both of which are inactivated when an employee leaves the company.

49. Defendant Mr. Babbie expressly agreed in the first sentence of paragraph 5 of the Confidentiality/Non-Competition Agreement that he signed with TECH USA that any breach by Defendant of paragraphs 1-4 of that Agreement "will cause [TECH USA] immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event."

50. Defendant Mr. Babbie, an IT Recruiter, on information and belief misappropriated TECH USA's Trade Secrets before and/or after Termination of Employment, for his own (and/or their) benefit, and/or for the benefit of a third party, including, without limitation, Defendant Diversant, another Staffing and Recruiting firm in the Greater Philadelphia Area (as confirmed in his LinkenIn Profile) located about twenty miles from Plaintiff's Plymouth Meeting office.  On information and belief, such acts of Defendant(s) in misappropriating TECH USA's Trade Secrets have been willful and malicious.

51.     On information and belief, Defendant Diversant willfully and maliciously engaged in the misappropriation of TECH USA's Trade Secrets by receiving TECH USA's Customer information from Defendant Mr. Babbie.  As a Staffing and Recruiting firm with years of experience, Defendant Diversant knew (or should have known) that the information it was gleaning from Defendant Mr. Babbie consisted of its competitor TECH USA's Trade Secrets.

52.     Plaintiff has suffered damage and, unless the misappropriation detailed above is enjoined, will continue to suffer damage as a result of Defendant Mr. Babbie's and/or Defendant Diversant's unlawful misappropriation of Plaintiff's Trade Secrets.  The harm cannot be fully recompensed in monetary damages, and is irreparable.

WHEREFORE, Plaintiff prays judgment as follows:

(a)        Entry of a Preliminary and Permanent Injunction against Defendants Mr. Babbie  and Diversant and their agents, servants and/or employees, and all those acting in concert with any of them, enjoining them pursuant to § 1202 of the Act and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement from using or disclosing TECH USA's Trade Secrets for their own benefit and from otherwise violating the Act and/or paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement.

(b)        Entry of a judgment jointly and severally against Defendants Mr. Babbie and Diversant pursuant to § 1203 of the Act for exemplary damages in an amount not exceeding twice any damages award made under § 1203(a), because such Defendant(s) have (as stated above) engaged in a willful and malicious misappropriation, except (as to Mr. Babbie only) to the extent a damage claim against him is required to be arbitrated.

(c)        Entry of a judgment jointly and severally against Defendants Mr. Babbie and Diversant for Plaintiff's costs and expenses (including, without limitation, its

reasonable attorneys' fees and court costs in connection with the proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Mr. Babbie).

(d)     Entry of a judgment jointly and severally against Defendants Mr. Babbie and Diversant pursuant to § 1204 of the Act for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding), since Defendant(s) have (as stated above) engaged in a willful and malicious misappropriation.

## COUNT VI

### Tortious Interference with the Contract between the Plaintiff and Defendant Mr. Babbie – Defendant Diversant and Defendant Mr. Mullen

53.     Plaintiff TECH USA hereby incorporates paragraphs 1-52 as if each were fully set forth herein.

54.     Plaintiff established contractual and other advantageous business relationships with its key recruiting, sales, and management employees including, without limitation, the Defendant Mr. Babbie.

55.     Defendant Diversant, as a Staffing and Recruiting firm with decades of experience, Defendant Diversant knew (or should have known) of TECH USA's contractual and other advantageous business relationships with its key recruiting, sales, and management employees, and, on information and belief, learned of Defendant Mr. Babbie's contract with TECH USA when speaking with him during the hiring process after the termination of his TECH USA employment.  Defendant Mr. Babbie was not the first employee of Plaintiff's Plymouth Meeting office that Defendant Diversant had hired, and, prior to hiring Mr. Babbie, Defendant Diversant (and/or its counsel) had received demand letters regarding that prior hire Defendant

Mr. Mullen, as well as the prior hire's confidentiality/non-competition agreement, in form substantially similar to that attached as Exhibit A, *supra*. Defendant Mr. Mullen, a former sales employee of Plaintiff's sister company at the Plymouth Meeting office that the two companies share, knew very well of Plaintiff's contractual and other business relationships with its management, sales, and recruiting employees, having worked at the Plymouth Meeting office for fourteen months, more than six of those months while Defendant Babbie worked in that same office for Plaintiff. Defendant Mr. Mullen resigned from his employment with Plaintiff's sister company and joined Diversant as a staffing salesperson approximately two months before Defendant Babbie joined Defendant Diversant as a recruiter focusing on the TECH USA Cable Customer that Mr. Babbie had contacted and serviced extensively while a recruiter at Plaintiff. Plaintiff's sister company is currently pursuing its claims against Defendant Mr. Mullen in a different forum, and they are not part of this action.

56. Despite knowledge of Plaintiff's advantageous business relations and contractual relationships with its key recruiting, sales, and management employees, Defendant Diversant and Defendant Mullen (the latter of whom knew well of Defendant Babbie's extensive servicing of and contact with the TECH USA Cable Customer while a recruiter for Plaintiff, which TECH USA Cable Customer was and is currently a target sales customer of Defendant Mullen while employed at Defendant Diversant) tortiously and, on information and belief, maliciously, intentionally and unjustifiably, interfered with TECH USA's business relations and contractual relations with Defendant Mr. Babbie by effectively soliciting and encouraging the Defendant Mr. Babbie to breach his contractual and legal obligations to Plaintiff, in violation of Defendant Mr. Babbie's contractual obligations to TECH USA on, among other things, non-competition, employee non-solicitation, and customer non-solicitation, and, on information and belief.

Indeed, Defendant Mr. Mullen recently made an admission to one of Plaintiff's employees that Mr. Babbie has obtained at least one "start" (a transaction for which he will be compensated and on which Defendant Diversant will make profit) at Plaintiff's Cable Customer in recent weeks while recruiting for Diversant and supporting Diversant sales employee Defendant Mr. Mullen.

57.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of the Defendant Diversant's and Defendant Mr. Mullen's tortious interference.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against Defendant Diversant and Defendant Mr. Mullen as follows:

(a)     Entry of a Preliminary and Permanent Injunction against Defendant Diversant and Defendant Mr. Mullen, its and his agents, servants and/or employees, and those acting in concert with either (or both) of them, enjoining them from further tortious interference.

(b)     Entry of an Order requiring an accounting by Defendant Diversant and Defendant Mr. Mullen to TECH USA of its and his sales and revenues, as a result of its aforesaid acts of tortious interference, and awarding Plaintiff punitive damages from Defendant Diversant and Defendant Mr. Mullen in the amount of One Million Dollars ($1,000,000).

(c)     Entry of a judgment against Defendant Diversant and Defendant Mr. Mullen for TECH USA's costs and expenses.

## COUNT VII

## Common Law Unfair Competition - All Defendants

58.     Plaintiff TECH USA hereby incorporates paragraphs 1-57 as if each were fully set forth herein.

59.     On information and belief, each of the Defendants has committed the tort of unfair competition against Plaintiff.   They have acted unfairly and deceptively, and have acted deliberately, maliciously, and with reckless disregard for Plaintiff's rights and the rights of members of the public.

60.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' unfair competition, as described above.   The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction against all Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from engaging in unfair competition with TECH USA.

(b)     Entry of an Order requiring an accounting by all Defendants to TECH USA of their respective sales and revenues, as a result of the aforesaid acts in violation of the common law of unfair competition, and awarding Plaintiff punitive damages from all of the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000), except (as to Mr. Babbie only) to the extent a damage claim against him is required to be arbitrated.

(c)     Entry of a judgment against all Defendants jointly and severally for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Mr. Babbie).

## COUNT VII

### Civil Conspiracy - All Defendants

61.     Plaintiff TECH USA hereby incorporates paragraphs 1-60 as if each were fully set forth herein.

62.     On information and belief, the three Defendants agreed before Defendant Mr. Babbie joined Defendant Diversant as a recruiter:

(i) that Defendant Mr. Babbie would violate his various obligations under his Confidentiality/Non-Competition Agreement with TECH USA including, without limitation, his customer non-solicitation covenant, employee non-solicitation covenant, and covenant not to compete, which he did;

(ii) that Defendant Diversant and Defendant Mr. Mullen would interfere tortiously with TECH USA's contractual and other advantageous business relationships with its key recruiting, sales, and/or management employees, which they both did;

(iii) that Defendant Mr. Babbie would engage in solicitation of Plaintiff's customers (including, without limitation, the TECH USA Cable Customer) in intentional disregard of the post-term customer non-solicitation covenant in the Confidentiality/Non-Competition Agreement between TECH USA and Defendant Mr. Babbie, which he did;

(iv) that Defendant Mr. Babbie would engage in solicitation of Plaintiff's employees (including, without limitation, the Babbie-Solicited TECH USA Employee) in intentional disregard of the post-term employee non-solicitation covenant in the Confidentiality/Non-Competition Agreement between TECH USA and Defendant Mr. Babbie, which he did;

(v) that Defendant Mr. Babbie would compete against Plaintiff in intentional disregard of the post-term covenants not to compete in the Confidentiality/Non-Competition Agreement between TECH USA and Defendant Mr. Babbie, which he did; and

(vi)

to compete unfairly with Plaintiff, which they did.

63.    On information and belief, the Defendants Diversant and Mr. Babbie committed the above civil conspiracy with malice toward the Plaintiff, and they have continued that civil conspiracy during Defendant Mr. Babbie's employment with Diversant, at least up to the date of the filing of this Amended Complaint.

64.    Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' civil conspiracy and acts in furtherance thereof.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all Defendants as follows:

(a)         Entry of a Preliminary and Permanent Injunction against all Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from future acts in furtherance of the civil conspiracy.

(b)         Entry of an Order requiring an accounting by all Defendants to TECH USA of their sales and revenues, as a result of their aforesaid civil conspiracy, and awarding Plaintiff compensatory damages, and, in light of the Defendants' engaging in the aforesaid civil conspiracy with malice toward the Plaintiff, punitive damages from all Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000), except (as to Mr. Babbie only) to the extent a damage claim against him is required to be arbitrated.

(c)          Entry of a judgment against all Defendants, jointly and severally,

for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees

and court costs in connection with this proceeding pursuant to paragraph 9 of the

Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Mr. Babbie).

Dated: February __, 2016

Allan P. Hillman
Kern & Hillman, LLC
2911 Dixwell Avenue, Suite 203
Hamden, CT 06518-3915
(203) 782-9076
allan@franchiselawsource.com
U.S. District Court No. 00119

Grover C. Outland III
TECH USA, LLC
8334 Veterans Highway
Millersville, MD 21108
(410) 846-9095
gco@techusa.net
U.S. District Court No. 24064

Attorneys for Plaintiff